# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALVIN DUDLEY <br> 158 Fantasy Drive <br> Henryville, PA 18332 <br>                 Plaintiff, <br><br> v. <br><br> POCONO MOUNTAIN RECOVERY CENTER, LLC <br> 3437 PA 115 <br> Henryville, PA 18332 <br>    and <br> POCONO MOUNTAIN RECOVERY FOUNDATION <br> 3437 PA-115 <br> Henryville, PA 18332 <br>    and <br> POCONO MOUNTAIN RECOVERY CENTER LAND, LLC <br> 3437 PA-115 <br> Henryville, PA 18332 <br><br>                Defendants. | CIVIL ACTION <br><br> NO.: _____ <br><br><br> **JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Galvin Dudley (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by the Pocono Mountain Recovery Center, LLC, the Pocono Mountain Recovery Foundation, and the Pocono Mountain Recovery Center Land, LLC (*hereinafter* collectively referred to as "Defendants") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq*.), and the Pennsylvania Human Relations

Act ("PHRA").[1]  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3. This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein (in part) under Title VII after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes.  He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue-letter under Title VII.  Plaintiff's PHRA claims however will mirror identically his federal claims under Title VII.

**PARTIES**

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. The Pocono Mountain Recovery Center, LLC, a Pennsylvania corporation, operates a residential drug and alcohol rehabilitation facility located in northeastern Pennsylvania at the above-captioned address.

9. Upon information and belief, the Pocono Mountain Recovery Foundation, a non-profit Pennsylvania corporation, operates a residential drug and alcohol rehabilitation facility located in northeastern Pennsylvania at the above-captioned address. The Pocono Mountain Recovery Foundation is listed as Plaintiff's employer on his paystubs and W-2 forms at the same address.

10. Upon information and belief, the Pocono Mountain Recovery Center Land, LLC, a Pennsylvania corporation, operates a residential drug and alcohol rehabilitation facility located in northeastern Pennsylvania at the above-captioned address.

11. At all times relevant herein, Defendants acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

12. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

13. Plaintiff was employed by Defendants for approximately 3.5 months before his unlawful termination on or about November 20, 2020 (as discussed *infra*).

14. During his tenure with Defendants, Plaintiff was initially supervised by Chris (last name unknown – *hereinafter* "Chris") until she separated from Defendants in or about October of

2020. Thereafter, Plaintiff was supervised by Maintenance Supervisor, Tom Crosby (*hereinafter* "Crosby"), who was hired shortly after Plaintiff.

15. All of Defendants' management at Plaintiff's work location, including the aforementioned supervisors, were Caucasian and/or non-black.

16. Plaintiff is a black (African-American) male and 1 of only 4 black employees out of Defendants' approximately 40-employee workforce.

17. While employed with Defendants, Plaintiff was a hard-working employee who performed his job well.

18. Upon Plaintiff's observations and belief, Defendants' work environment has been disparate and unfairly harsh toward black employees.

19. Throughout the course of Plaintiff's employment with Defendants, he and other black employees were subjected to race discrimination, harassment, and disparate treatment by Defendants' non-black management. For example, but not intended to be an exhaustive list, unlike Plaintiff's non-black co-workers:

  a. Defendants' non-black management treated Plaintiff and other black employees in a derogatory and condescending manner and regularly talked down to them;

  b. Black employees were routinely denied promotions to management positions which were instead largely given to less qualified Caucasian individuals; and

  c. Plaintiff and other black employees were subjected to pretextual admonishment and unfairly terminated.

20. Additionally, after Plaintiff's original supervisor, Chris, separated from Defendants, Crosby was responsible for hiring the next supervisor. When Plaintiff notified Crosby that he was interested in applying for the supervisor position, Crosby hostilely and disparaging

informed Plaintiff that (1) it is company policy to promote an employee only after 1 year of service; (2) Plaintiff "was not supervisor material"; (3) "**you people** aren't good supervisors"; and (4) Plaintiff did not "fit the part" – all of which, upon Plaintiff's information and belief, were clearly discriminatory references to his race, as Defendants did not have any black employees in management.

21. Thereafter, the aforesaid supervisor position was given to the only other housekeeper who worked for Defendants, a Caucasian female, Heidi (last name unknown – *hereinafter* Heidi).

22. Plaintiff believes and therefore avers that he was overlooked for the aforesaid supervisor position on account of his race because (1) Plaintiff had prior supervisory experience, while Heidi had none; and (2) Heidi had less seniority/tenure with Defendants than Plaintiff, as she was hired a few months after Plaintiff.

23. Leading up to his termination, Plaintiff expressed concerns to Crosby about the racial comments he was being subjected to and that he believed he was denied the supervisor promotion because of his race, but Crosby ignored Plaintiff's concerns and merely repeated, "**you people** are not good in supervisory roles."

24. Because of Crosby's discriminatory and offensive conduct and comments to Plaintiff, Defendants' Caucasian and/or non-black employees believed it was acceptable to make comments about and ridicule black employees, including Plaintiff. For example, on or about November 20, 2020, a Caucasian employee made offensive and discriminatory comments in Plaintiff's presence while he was working, specifically stating, "I don't know why **you people** are so upset about not getting the supervisor position" and referring to Plaintiff in further comments as "**these people**."

5

25. In response to the Caucasian employee's aforesaid racially hostile comments (*see* Paragraph 24, *supra*), Plaintiff calmly inquired who she meant by "**you people**." However, instead of responding to Plaintiff's question, the Caucasian employee began to yell, scream, and throw her hands in Plaintiff's face. Plaintiff was then removed from the room by Crosby and Heidi who informed Plaintiff that was he being terminated for "retaliating" against the Caucasian employee for attempting to question her about her racial comments.

26. Plaintiff immediately complained to Defendants' Human Resources ("HR") Department about the racially hostile comments he was subjected to by a Caucasian employee; however, Plaintiff was informed by an HR representative that the Caucasian female's comments were "protected" and that **his** complaints of race discrimination were "retaliatory." The HR representative then confirmed Plaintiff's termination.

27. Plaintiff believes and therefore avers that he was really subjected to a hostile work environment and terminated because of his race and/or in retaliation for his complaints of/objections to race discrimination.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

28. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

29. During Plaintiff's employment with Defendants, he was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/derogatory comments, racial slurs, and treatment because of his race and/or complaints of race discrimination.

30. Instead of investigating Plaintiff's aforesaid complaints of race discrimination, Defendants' non-black management ignored them, left his legitimate concerns unresolved, and subjected him to increased hostility and animosity (as discussed *supra*).

31. On or about November 20, 2020, shortly after his last complaints of race discrimination and a hostile work environment to Defendants' non-black management, Plaintiff was abruptly terminated.

32. Plaintiff believes and therefore avers that he was subjected to a hostile work environment and terminated from his employment with Defendants because of his race and his complaints of race discrimination.

33. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

## COUNT II
### Violations of 42 U.S.C. Section 1981
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. During Plaintiff's employment with Defendants, he was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/derogatory comments, racial slurs, and treatment because of his race and/or complaints of race discrimination.

36. Instead of investigating Plaintiff's aforesaid complaints of race discrimination, Defendants' non-black management ignored them, left his legitimate concerns unresolved, and subjected him to increased hostility and animosity (as discussed *supra*).

37. On or about November 20, 2020, shortly after his last complaints of race discrimination and a hostile work environment to Defendants' non-black management, Plaintiff was abruptly terminated.

38. Plaintiff believes and therefore avers that he was subjected to a hostile work environment and terminated from his employment with Defendants because of his race and his complaints of race discrimination.

39. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.	Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.	Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:	_____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: February 8, 2021